The next case for argument is 24-1461, Bumgardner v. Collins. Mr. Wells, good morning. Please proceed. Thank you. Good morning, Your Honors. John Wells on behalf of Anita Bumgardner, who is the widow of Sgt. 1st Class Clifford Bumgardner, United States Army, retired. In 2009, this court in Cushman v. Shinseki ruled that the due process clause attaches to veterans' benefits. And, of course, you would think that when you look to due process, the veterans should certainly get as much as you can. But the question then becomes, what process is due? In this particular case, quite a bit more than you would have, say, post-AMA. Under the AMA, the duty to assist is not attached. Can I stop you here just for purposes of the audience? Why don't we talk a little? Let me start by saying, as you know, our standard of review in these veterans' cases is extremely limited. So the facts may be on your side or you may think they're on your side, but that's not relevant to our proceeding today because we decide only questions of law. You're exactly right, Your Honor. This court has a specific standard of review for veterans' cases, which is very narrow. However, included within that standard of review is constitutional issues such as due process. Yes. I mean, a lot of people throw words like constitutional and due process around. So most of our cases say, yes, due process is covered, but this is clearly not sufficient. Let me just also spend a minute just because the background of your case is a little interesting in terms of your client's husband served in Panama and other places. And the allegation here is that his ultimate death a number of years ago was the result of his exposure to Agent Orange. That's correct. And as you know, we've got statutory provisions in court cases that ascribe a presumption if you die of certain causes that you get Agent Orange. But your client's husband does not fall within those categories where there's a presumption given his service in Panama. That's correct, Your Honor. This is not a presumption case. It's a direct exposure case under 38 U.S.C. 1113. I think I got that right. And we say it's directly exposed. Now, this is where the problem comes in because in building an evidentiary case, and, of course, evidentiary matters can offend due process if the standard evidentiary practices are not found, is you have to lay out a factual predicate or a foundation to show that, in fact, the evidentiary is not done. So where is the denial of due process that rises to the level of a constitutional violation? I'm sorry, Your Honor, I misread you. Where is the denial of due process in terms of your clients? Well, let's start with the two-month rule that the Board of Veterans' Appeals seemed to apply to the Bumgarner case. Now, the problem with two-month rules is it's not in statute. It's not in regulation. It was an administrative rule that was included in the M21 adjudication manual, which is not binding on the board or on anybody else. I'm confused about the two-month issue because you did raise it in blue, but then in gray in your reply brief, you say that the two-month requirement the government's talking about is a red herring. Yes, it is. But you were the one that brought it up in your opening brief, arguing that the CABC read an impermissible requirement on the duty to assist statute. And I brought that up because both the board and the court had relied that on coming to the conclusion that Mrs. Bumgarner had not established her case. But I thought by the end of – by gray, by your reply brief, we had kind of narrowed this case to eliminate this two-month rule argument because even you, I think, say, well, it doesn't really matter. Because the records that we were seeking, whether they were for two months or for two years or 12 years, do not have enough specificity that would have established what your client was trying to establish here. It does not matter, but it matters only because both the board and the court relied on it to deny the claim. If the board had said there is no such thing as a two-month rule, and I think we all agree there is no such thing as a two-month rule, and just decided on the merits or said, yes, you should have gone ahead and sent a request to the JSRRC, I think they call it something else now, JSRRC asking for an opinion as to whether or not there could have been exposure, that's what they should have done. But they didn't do that. What's the legal question before us on appeal related to the two-month rule, if anything? Let's go back to the basis of due process. If you're going to rely on something, as the board did and the court did, then you've got to have notice and an opportunity to be heard. So are you asking us in this appeal to decide whether the two-month rule is a violation of due process rights of veterans and their survivors? The application of the two-month rule in this particular case, because I've never seen it outside of Blue Order. The application of it would be outside of our jurisdiction, would it not? Because that would require consideration of the facts. Not in this case, Your Honor, because what happened was they said she never complied with the two-month rule. And because she never complied, we're not going to ask anything from the JSRRC, who could have come up and said, yeah, Agent Orange wasn't there. So I think maybe I'm confusing you and me together. What, if anything, is the question of law related to the two-month rule that we need to decide in this appeal? Was there notice and an opportunity to be heard for the claimant in this case to, one, know that the two-month rule was out there, and, two, give an opportunity to comply with it? In this particular case, it should be denied. But this case, I mean, this case has been litigated. Firstly, I can't see where the two-month rule, your arguments with respect to the two-month rule were raised before the CAVC. Was it your position that it was preserved and the arguments were made? Yes, it was raised.  The board, the CAVC and the board looked at, I mean, your client had to show something. Yes. Leaving aside the two-month rule, there was lots of other evidence in the record. She came up with studies. She came up with her testimony, and I think the testimony of her son. And the board concluded, and the CAVC agreed, that all of that was insufficient. So if you're conceding that this two-month rule, that the data there wouldn't have shown anything because they don't keep records on the specificity of what's in barrels that people are carrying around, what does it matter? I mean, isn't this, at a minimum, a harmless error case? Because she did not comply with the two-month rule. I think that's perhaps the most important thing, other than the fact that the board, in applying evidentiary standards, and again, I'm aware, definitely aware of the limitations of the court here on what you can study or what you can rule on. But in this particular case, there was a circumstantial evidence case built, as your Honor pointed out. However, they did not look at the circumstantial evidence. They looked at individual blocks. Take, for example… What particular circumstantial evidence are you contending was not examined? It was not examined, your Honor, in the totality. Individual blocks were looked at. Oh, so you are agreeing that the various pieces of circumstantial evidence were considered, but you're indicating that you don't feel like it was all put together as one puzzle? Is that kind of what you're contending? Pretty much, your Honor. And here's the problem. Take, for example, the 152 pages or whatever it was of shipping documents showing that the aging worms were shipped to Panama. Okay. By itself, it proves that it was shipped to Panama. It does not prove that the veteran was exposed. Then you look at the second piece of evidence where the veteran actually says, but I moved barrels of aging orange. And he would know that as the senior NCO on military police what was being sprayed on the perimeter, number one. Number two, there's orange stripes on the barrels. I think if you look at the appendix, I want to say appendix 40, you'll see pictures of barrels in Panama with orange stripes on them. Number three is the fact that he had a disease that could be presumptive for aging orange. If you look at those blocks one at a time, except perhaps block number two, that's pretty conclusive, I would think, you don't get the full picture. You have to pull it together. And that's the way we do circumstantial evidence, as your Honor found. You can't go into court on a murder case and say, well, there's a knife, and it had blood on it, and then without going and saying, yes, we tested the blood, and yes, it belonged to the victim or in fact belonged to the victim. But I think you appreciate, as you've indicated earlier in the argument, that you're stumbling right into a problem with the standard of review. Because what you're talking about now is really not only do we not have jurisdiction over questions of fact, we don't have jurisdiction over applications of law to fact. So what you just said in the past four minutes, as eloquent as it may have been, seems to be quintessentially what is beyond our jurisdiction in these cases. And I appreciate the eloquence comment, your Honor, but the problem is, at what point does this rise to a due process violation? And if you sit there and do not look at the evidence in total, okay, and if you take a rule, a two-month rule, and rely on that, even though it really doesn't exist, that is a due process violation. Green v. McElroy, and I'm in the library all the time, I apologize, but Green v. McElroy basically says if you're going to rely on something to take away somebody's benefits or deprive them of benefits, then you've got to give notice and opportunity to be heard. That was not done. Can I just ask you, at the last two pages of your blue brief, you have an argument about 38 U.S.C. 1310. I don't understand. That may be within our jurisdiction. It's a question of law, but I don't quite understand what you're alleging the error is there. Well, it doesn't even come into effect, really, unless we find that he was exposed to Agent Orange. So I understand your confusion, I think. So that argument is contingent on you winning one of your earlier arguments? That's correct. I see. Thank you. Why don't we hold the rest of your rebuttal and we'll hear from you. Thank you, Your Honor. Good morning, and may it please the Court. This Court should dismiss Mrs. Baumgartner's appeal for lack of jurisdiction. Mrs. Baumgartner raises six different issues, all of which involve factual determinations or application of law to fact, and none of which are resultingly in this Court's jurisdiction. I'd like to concentrate, I think, mostly on the two-month rule, as that was the main subject of your discourse with Mr. Wells. As you noted, simply placing the due process label on an argument doesn't bring it within this Court's jurisdiction. No, but why don't we turn it into a legal question, if we can? So let's assume, hypothetically, that the Board and the CABC began and ended this case by saying, we asked her for two months' worth of evidence and she didn't give it to us, full stop, she loses. Would that not be a legal question? Would that be? And what's your answer to that question? Is that okay? I mean, so even assuming that, you know, as Your Honor alluded to, that appellant didn't abandon this argument in reply, and I think that the way that Mrs. Baumgartner framed that argument is certainly, I think as you alluded to, an application of law to fact, but even assuming that this is a legal issue, I don't think that there's any developed argument on appellant's part that would cause it to rise to the level of a due process violation. Mr. Wells alluded to meaningful opportunity and a notice to be heard and that she wasn't aware of this two-month rule until the Board issued its decision, but I don't think that even delving into the facts of this case, which, again, we submit that the Court shouldn't do, we don't think that the record supports this contention. VA, in asking Mrs. Baumgartner for that two-month span of time, thereby notified her, and that is in the record at appendix. And what was her response to that? My recollection is she gave large swaths of time from Korea and somewhere else. It was a little bit puzzling. My understanding is that Mrs. Baumgartner, in her response, which is at APX 354, listed several years in Vietnam and several years in Korea, but the puzzling part, at least to me, is that all of these periods of time, in addition to being well beyond the two months, predated Mr. Baumgartner's time in service, and our understanding is that Mr. Baumgartner did not even serve in Vietnam. But also, wasn't his claim to Agent Orange exposure limited to Panama, or did it also include Korea? It's a little unclear to us on that point. I think that the briefing in front of this Court, I think, narrows it down pretty clearly to Panama, in terms of this is when Mrs. Baumgartner testified that Mr. Baumgartner stated that he carried Agent Orange barrels and such, but I think that there's also allusions to the possibility that it was in Korea as well. But I think either way you look at it, whether it's confined to just Panama or includes Panama and Korea, the dates of Mr. Baumgartner's service are, again, well beyond the time that Mrs. Baumgartner provided to VA to give to the JSRRC. And then VA, when it issued the finding telling Mrs. Baumgartner that she hadn't provided information sufficient for that center to conduct its search, again, notified her of that at the time. So I don't think that Mrs. Baumgartner can now come and say, in the light of these two notifications by VA, that she did not have the notice of this two-month period, and therefore was deprived of a meaningful opportunity to be heard. Counselor, you point us to appendix page 354. What did you want us to take from that page? Let me just pull that up. And Judge Brooks was asking the dates that Mrs. Baumgartner provided in response to VA's request for information. So VA's request for information was at APPX 329, and it asked to provide approximate dates within a two-month time frame that Mr. Baumgartner was exposed to Agent Orange. And Mrs. Baumgartner's response on APPX 354 in the last paragraph gives the dates as between 1962 and 1975 in Vietnam, and April 1968 to August 1971 in Korea. However, as I mentioned a couple minutes ago, Mr. Baumgartner does not appear to have served in Vietnam, and the dates that he mentions in Korea well predate his own service in Korea. And so even beyond not adhering to the two-month request that VA made of Mrs. Baumgartner, as we alluded to in our brief, those dates wouldn't have actually assisted the JSRC in finding his service and medical records that could have potentially confirmed exposure. We don't have a two-month rule anymore, right? Sorry? Is there still a two-month rule? No. My understanding is that the JSRC is not a component of VA. It's a separate office that VA used to work with to find records. I believe that was part of DOD. Now, I think maybe after the AMA, they moved all of that in-house, and so the record search is now done by a component of VA. And now the time span is, I believe, 120 days rather than two months. Okay. And how detailed? I couldn't discern from the record. I mean, even I think there's some concessions in the reply brief that these records aren't detailed enough. I mean, they would have had to show here his personal exposure, I don't know, carrying barrels or whatever. Do those records have that kind of detail in them? I mean, I can't speak to what the records would have said. I mean, it doesn't seem like those records, at least in Mr. Baumgartner's regular service file that already exists, I don't think the records show any exposure, which makes sense given the dates and places of his service. Could there have been a possibility that if he was exposed to Agent Orange that something may have been noted? The answer is we don't know. It would have been certainly irregular for Mr. Baumgartner to have been carrying Agent Orange barrels, I think, almost two or three decades after the government stopped using Agent Orange, so something that unusual could have been in the record if it existed. But the record as is, you know, as the board found, all that circumstantial evidence was overwhelmingly in favor of showing that Mr. Baumgartner was not exposed to Agent Orange. How does the death certificate factor into the proof? I think there was quite a bit made in the briefing about the death certificate, and it's talking about Agent Orange exposure. How do you contend that would factor into the proof? Well, the – so the CAVC – the board actually initially issued a decision finding against Mr. Baumgartner having exposure, and then the Veterans Department actually remanded because the board had not specifically discussed a death certificate that said that, you know, his death could have been connected to Agent Orange. And then there was also a medical opinion from a Dr. Kuzuz, who also said – to exposure to Agent Orange. So the Veterans Department remanded for the board to take notice of and discuss these two elements, and the board on remand did just that. It discussed both the death certificate and the medical opinion, but decided to not afford much probative weight to those because they simply assumed exposure to Agent Orange, and the medical opinion in particular contained no medical reasoning as to why it found that it was more likely than not or just as likely as not that Mr. Baumgartner's illness was tied to Agent Orange. And so the board did discuss both of these cases of evidence and placed what it found to be the appropriate amount of or lack of probative weight on that. But, of course, the board's weighing of the evidence and its findings of probative value are issues that are, I think, very clearly outside of this court's jurisdiction, as Judge Post noted to my counterpart here. I'm happy to discuss any other questions. Would you just address this last point that I raised with your friend on the other side about Section 1310? I'm principally just concerned with is that a question of law within our jurisdiction or do we lack jurisdiction over it? You addressed it in the last two pages of your brief, but I can't tell if you think we have jurisdiction over it or not. Well, I think that Mr. Wells and I, I think, are at least in agreement that that claim is derivative of and dependent on his success on the other claims, even assuming that he could succeed on the other claims, which we think that, again, the court lacks jurisdiction over those five arguments. But even if the court had jurisdiction, we also think that he couldn't or that she couldn't succeed. At that point, then we think that the application of 1310 would still be an application of law of fact. I don't think there's really a straight allegation of pure legal error here. So I think that even if an appellant could establish a predicate for considering 1310, that it would be an application of law of fact and therefore outside this court's jurisdiction. It seems like an interesting question. If you have a predicate question that has to be resolved in order to reach, let's just say, for sake of argument, a legal question, but we have no jurisdiction over the predicate question, do we have jurisdiction over the sort of consequent legal question? I think that's not an easy question. I think that there's certainly potential for edge cases that are not within my sphere right now where that could possibly be the case. But I think here, assuming a predicate for the first five issues or any of the first five issues is met, then I think what we still have would be an application of law of fact. But I also think that if the predicate for the first five issues was met, then the analysis by the CABC and the board on 1310 would have probably been different to begin with. So I think, again, that sort of establishes why this isn't a pure legal question within this court's jurisdiction. Thank you. Thank you. Thank you. Thank you. Your Honor, the judge proposed to ask my friend what would happen if, in fact, the board asked, this is about a guardrant for the two months, and we didn't respond. Well, that's not exactly what happened. Not what happened. Because the board never asked her. There was the one letter that she quoted in the appendix, I think it was appendix 329, where they said, in parentheses, give us the dates in a two-month time frame. Now, at this point, she's not represented by counsel. She probably got a claims agent. She had a claims agent, I think. But she responded. He was here during this time, and this time was a number of years. And my friend said, well, he wasn't there during the time of the spraying. That's fine. But then all the studies and everything else that's been done on Agent Orange, both in the record and without, show that that Agent Orange persists in the soil for years after. The Guam report, I think we quoted spraying stocks in Guam in 1980, and yet in 2019 they still found levels of the dioxin related to the chlorinated herbicides on the island of Guam. So, you know, it's, and again, this is a tough statute, and it's a tough standard to review, and I'm trying my best to come in here and satisfy you on this. It comes down to the fact that when does the failure of the board to look at all the evidence, to study all the evidence, when does that implicate due process? I mean, Congress has always said that this entire Veterans Benefit System should be non-adversarial, pro-veteran. You've got the Pro-Veterans Canon. You've got all kinds of things from them. Even in the Appeals Modernization Act, it says, hey, we want to make this easy, easy on the veteran to do, and instead it seems like, and I'm not being critical here, it just seems like that Congress, when they passed the jurisdictional statute, actually sought out to make it harder. Does a predicate issue, a factual issue, that it's required to trigger a legal issue, do you have jurisdiction to do that? I would argue that, yes, you would, because otherwise you can't get to the legal issue, and that's the same problem that we're having here with what the board did. If you go back to the circumstantial evidence, and the board always says, and I believe they said in this case also, well, there's no direct evidence. It doesn't have to be direct evidence. Circumstantial evidence counts. Supreme Court found that in Holland versus United States. You have to look at the circumstantial evidence, and as Judge Cunningham pointed out, you can't do it by taking its component points and not looking at it in the totality of the circumstances. Your Honors, it's always a pleasure to come before you. I do have a couple of minutes left. I'd be happy to answer any questions, but if you're ready for me to sit down, I guess I am too. Well, let me just make one point because we have an audience here of students just on your point, and I take your point about the system and the frustration with the limited standard of review, but the system that Congress created has first the regional office, and they go through the record. Then there's an appeal to the Board of Veterans' Appeals, and they go through the record and make findings and conclusions, and then it goes to the Court of Veterans' Claims, which also has jurisdiction over everything except deference to the board on facts. So you're right. It's frustrated at this level that our scope is so narrow, but that's not an indication that the veteran has no due process or no rights to be heard by a body other than us. Your Honor, I understand. Although the two-month rule, I don't think they really had a notification on that one, but it is frustrating, and I understand the Court's position, and I appreciate you listening to us. We're just trying to get these vets covered. Thank you. We thank both sides. The case is submitted.